IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRENDA BICKERSTAFF**, | ) | CASE NO. 1:14-cv-00831 |
| c/o The DiCello Law Firm | ) | |
| 7556 Mentor Ave. | ) | |
| Mentor, Ohio 44060 | ) | |
| | ) | JUDGE:  CHRISTOPHER BOYKO |
| Plaintiff, | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| vs. | ) | |
| | ) | |
| **VINCENT LUCARELLI** | ) | |
| Individually and as a Police Officer for | ) | |
| the City of Cleveland | ) | |
| Badge Number 1654 | ) | |
| 935 Stevenson Ave | ) | |
| Cleveland, Ohio 44110 | ) | |
| | ) | |
| **CAPTAIN DENNIS HILL** | ) | |
| c/o City of Cleveland Law Director | ) | |
| Barbara A. Langhenry, Interim Director | ) | |
| 601 Lakeside Ave., Room 106 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| **DET. MICHAEL LEGG** | ) | |
| c/o City of Cleveland Law Director | ) | |
| Barbara A. Langhenry, Interim Director | ) | |
| 601 Lakeside Ave., Room 106 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| **DET. CHERYL MCDUFFIE** | ) | |
| c/o City of Cleveland Law Director | ) | |
| Barbara A. Langhenry, Interim Director | ) | |
| 601 Lakeside Ave., Room 106 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| **CITY OF CLEVELAND** | ) | |
| c/o City of Cleveland Law Director | ) | |
| Barbara A. Langhenry, Interim Director | ) | |
| 601 Lakeside Ave., Room 106 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| **JOHN DOES NO.1-10**, Individually | ) | |
| and in Their Official Capacity as Police | ) | |
| Officers/ Detectives / Supervisors / In- | ) | |

Charge Officers / Commanders / With          )
the City of Cleveland, Ohio, Who              )
Participated In The Baseless Prosecution      )
of Plaintiff But Whose Exact Identities        )
Cannot Be Ascertained Presently               )
Defendants                                     )

## INTRODUCTION

Now comes Plaintiff, by and through undersigned counsel, and for her re-filed Complaint against Defendants, states as follows:

1.      This First Amended Complaint is offered to correct typographical errors in the previously filed complaint, to wit: Defendant McDuffie's name has been corrected, and Defendant Hill's residence has been clarified as being in the City of Reminderville, Cuyahoga County.  The Complaint is otherwise the same as originally filed.

2.      This action is a re-filed action, having been originally brought in the Cuyahoga County Court of Common Pleas, Case Number CV-13-803358, filed March 20, 2013, and dismissed without prejudice on June 19, 2013. It was refiled in Cuyahoga County March 21, 2014. Defendant City of Cleveland thereafter removed this matter to this Court.

3.      In the above-captioned action brought, in part, per Ohio common law, Plaintiff Bickerstaff alleges that the conduct, acts, and failures to act of the Defendants constitute unconstitutional and tortious conduct on their part for which no immunity applies. Plaintiff also asserts state law claims sounding under statutes in the State of Ohio, the United States Constitution and Title 42 U.S.C. § 1983.

## PARTIES

4.      All preceding paragraphs are incorporated as if fully re-written herein.

5.      Plaintiff Bickerstaff states that at all times relevant to this action she was a resident of the City of Cleveland, Cuyahoga County, Ohio.

6.      Defendant Detective Vincent Lucarelli is a member of the Cleveland Police Department whose status as a terminated/reinstated employed officer is on appeal; he is also a resident of the City of Cleveland, Cuyahoga County, Ohio.

7.      Defendant City of Cleveland is a municipal corporation located in the County of Cuyahoga, State of Ohio.

8.      Defendant City of Cleveland at all times relevant to this action employed the police officer Defendants: Detective Lucarelli (hereinafter "Defendant Lucarelli"), Lieutenant/Captain Dennis Hill (hereinafter "Defendant Hill"), Detective Michael Legg (hereinafter "Defendant Legg"), Officer Cheryl McDuffie (hereinafter "Defendant McDuffie"), and John Does 1-10 named herein, and has for its address 1300 Ontario St., Cleveland, Ohio, 44113.

9.      Defendant Hill is a resident of the city of Reminderville, Cuyahoga County, Ohio, and was a direct supervisor of Defendant Lucarelli.

10.     Defendant Legg is a detective with the Cleveland Police Department; he is also a resident of the City of Cleveland, Cuyahoga County, Ohio.

11.     Defendant McDuffie is a member of Cleveland Police Department; she is also a resident of the City of Cleveland, Cuyahoga County, Ohio.

12.     At all times relevant hereto, Plaintiff asserts that Defendants acted both inside and outside the course scope of their employment with the City of Cleveland.

13.     Redress is being sought from the police officer Defendants in their official and individual capacities.

14.     Plaintiffs allege that all police officer Defendants acted together to assist or cover up and/or permit the wrongful prosecution of Plaintiff by Defendant Lucarelli by failing to report wrongful conduct and/or failing to investigate wrongful conduct while acting

under and/or outside of color of law and/or pursuant to the policies, customs and/or usages of the City of Cleveland, Ohio.

15.     Redress is being sought from the City of Cleveland for:

     a.  Its pattern of failing to adequately investigate Lucarelli's misconduct and/or the misconduct of other officers and/or its official condonation of that misconduct, to wit: at all times relevant to this action, the City knew or had reason to know that 5th District officers and detectives were being mismanaged and/or inadequately investigated regarding this and other cases and failed to rectify the situation; and

     b.  Its custom of letting personnel at the 5th District use City resources and make grand jury presentations with impunity, without meaningful supervisory oversight, and thus without real accountability.

16.     At all times relevant herein, Defendant(s) John Doe Nos. 1-10, (Name and addresses unknown) was/were supervisors, commanders, police officers and/or other administrative and/or police department or other employees who participated in misconduct via texting and/or other means with Defendants and/or supervised Defendants at the 5th District of the City of Cleveland Police Department, but whom, through written discovery and/or deposition, may become known as being persons properly included as Defendants in this case.

### FACTS

### Defendant Lucarelli's Background of Misconduct

17.     All preceding paragraphs are incorporated as if fully re-written herein.

18.     At all times relevant to this Complaint it is misconduct (and a cause for discipline) for police officers at the City of Cleveland to do the following on City time:

a. Engage in "sexting" (sending sexually explicit text messages),

b. Send nude pictures of alleged female victims of crime to other officers,

c. Have sexual contact or conduct with alleged victims of crime,

d. Maintain a personal and/or sexual relationship with an alleged victim of crime while working on that alleged victim's case, and

e. Use City resources to participate in sexual contact or conduct with alleged victims of crime.

19.     At all times relevant to this Complaint, Defendant Lucarelli was a Cleveland police officer who did the following on City time:

a. Engaged in "sexting" (sending sexually explicit text messages),

b. Sent nude pictures of alleged female victims of crime to other officers,

c. Engaged in sexual contact or conduct with alleged victims of crime,

d. Maintained a personal and/or sexual relationship with an alleged victim of crime while working on that alleged victim's case, and

e. Used City resources, including but not limited to police cars, to facilitate his sexual contact or conduct with alleged victims of crime.

20.     At all times relevant to this Complaint, women named "Heaven" and Jasmin Harris were two of the aforementioned alleged victims of crime that Defendant Lucarelli had a relationship with while on duty as a Cleveland police detective.

21.     At all times relevant to this Complaint, Defendant Lucarelli took and/or solicited nude pictures of Heaven and/or Jasmine Harris and sent those pictures to his co-workers at the 5th District of the Cleveland Police Department, including Defendants Hill and Legg.

22.    At all times relevant to this Complaint, Defendant Lucarelli used City equipment (including but not limited to police cars, desks, phones, and office space) to carry-on his inappropriate contact with alleged victims of crime, including Heaven and Ms. Harris.

## Supervisor and Fellow Officer Silence

23.    At all times relevant to this action, Defendant Hill was a Lieutenant and supervisor of Defendant Lucarelli at the 5th District.

24.    At all times relevant to this action, police officers at the 5th District engaged in  a pattern and practice of writing false and/or misleading police reports designed to protect Defendant Hill and Defendant Lucarelli and/or other officers with whom they worked by omitting the wrongdoing of fellow officers, to wit:

> a. On or about July 24, 2011, Defendant Lucarelli told Hill he typed a Form OH-1 so Defendant Hill would not get in trouble for a prisoner not being released within 36 hours, as required by Ohio law.

> b. On or about January 6, 2012, Defendant Lucarelli and Defendant Legg worked with fellow officers to cover up the misconduct of Defendant Lucarelli regarding an assault on an arrested citizen – the cover-up was designed to prevent officers and Defendant Lucarelli from getting in trouble as a result of Lucarelli's unwarranted, overly-aggressive use of force on a citizen.

25.    Prior to Plaintiff being charged for contacting an alleged victim of crime, Defendant Hill had actual knowledge that Defendant Lucarelli had engaged in improper conduct, including improper relationships with alleged women-victims, to wit:

> a. Approximately one year before the events pertaining to March 24, 2012, occurred, Defendant Hill had been previously contacted by an attorney

who told Defendant Hill that Defendant Lucarelli was having an improper personal relationship with an alleged female victim.

b. On or about May 5, 2011, Defendant Lucarelli sent sexually explicit pictures of female victims to Defendant Hill.

c. On December 18, 2011, Defendant Lucarelli sent a picture of the woman named "Heaven," known to Defendant Hill as an alleged victim, and Defendant Hill responded, "Nice."

26. At all times relevant to this action, Defendant Legg was Defendant Lucarelli's partner at the 5th District Detective Bureau.

27. Defendant Legg also had prior knowledge of the improper conduct and improper relationships with alleged women-victims, to wit:

a. On January 6, 2012, at 03:58:51 am, Defendant Lucarelli texted Defendant Legg, "Went to drop heaven [sic] off be right back."

b. Defendant Legg responded, "K."

c. About fifteen minutes later, Defendant Legg told Lucarelli, "Get back here dude."

d. Defendant Lucarelli texted, "Why whats up."

e. Defendant Lucarelli again texted, "Whats goin on now."

f. Defendant Legg texted, "Sgt wants to see you."

g. Defendant Lucarelli texted, "Okay i ll be there in ten minutes."

28. On July 21, 2011, Defendant Legg again had an exchange with Defendant Lucarelli about Defendant Lucarelli's womanizing with alleged female victims, causing Defendant Lucarelli to text, "U have seen the proof."

29.    On August 7, 2011, Defendant Legg and Defendant Lucarelli exchanged texts detailing another one of Defendant Lucarelli's sexual interests in women witnesses, regarding a woman who Defendant Lucarelli described as "half white" – a woman about whom Defendant Legg said "Maybe while your [sic] hitting it you can ask her who shot Meech for me."

30.    On August 16, 2011, Defendant Lucarelli texted Defendant Legg and directed Defendant Legg to assist Lucarelli in breaking departmental rules, to wit: "I'll be about 10-15 minutes late this evening. And don't you say a word about it."

31.    On September 13, 2011, Defendant Lucarelli texted Defendant Legg, "Quit acting like one of my psycho broads."

32.    On December 22, 2011, Defendant Legg texted Defendant Lucarelli, "How is Heaven? Any new pics?" and Lucarelli texted, "Had her naked, was too preoccupied to take one, hopefully tonight no games with this one. Her body is a 10+ all day."

33.    Note the following texting that took place regarding Heaven in December 2011:

    a.  Defendant Legg: "You [have sex with her] already?"

    b.  Defendant Lucarelli: "Did that 2 years ago just picked up where we left off."

    c.  Defendant Legg:"Just don't leave any shmutz on my desk."

    d.  Defendant Lucarelli: "Just your chair I had her pink lace panties in ur drawer but you got sick so I took them back. That was gonna be [funny]."

    e.  Defendant Legg remarked, "Lol, real funny [....]."

34.    Despite having knowledge of Defendant Lucarelli's misconduct, including but not limited to improper relationships with alleged women-victims, as shown above, Defendant Hill helped to perpetuate and/or conceal Lucarelli's misconduct: 1) by

intentionally remaining silent and doing nothing to discipline, correct, or otherwise oversee or stop Lucarelli from engaging in misconduct including but not limited to personal relationships with alleged female victims, and/or 2) by making no reasonable inquiry into Lucarelli's misconduct and/or by 3) lying to Internal Affairs after news of Defendant Lucarelli's misconduct finally became public.

35.    Despite having knowledge of Defendant Lucarelli's misconduct, including but not limited to improper relationships with alleged women-victims, as shown above, Defendant Legg helped to conceal Lucarelli's misconduct: 1) by remaining silent and not reporting Lucarelli's absence from the station and/or other rule violations, and/or 2) by intentionally authoring misleading, incorrect, false police reports, and/or 3) by failing to prevent, stop, and/or report to his direct supervisors or other supervisors the fact that Defendant Lucarelli had been engaging in a personal and/or sexual relationship with alleged female victims, and/or 4) by lying to Internal Affairs after news of Defendant Lucarelli's misconduct finally became public.

36.    By their failure to discipline, report, respect the chain of command, and/or otherwise curtail the misconduct of Defendant Lucarelli, Defendants created and perpetuated a prevailing code of silence and an environment of misconduct at the 5th District that enabled/assisted Defendant Lucarelli to prosecute Plaintiff.

37.    Had Defendant Lucarelli been properly disciplined before March 24, 2012, Defendant Lucarelli: 1) would not have been permitted to remain active in the police department and/or detective bureau, and 2) he never would have been able to prosecute Plaintiff for merely speaking with Jasmine Harris.

**Plaintiff Contacts Lucarelli's Love Interest**

38.     At all times relevant to this Complaint, Plaintiff worked as a private investigator for various defense attorneys and law firms in the Greater Cleveland, Ohio area.

39.     On or about March 24, 2012, Plaintiff Bickerstaff was working as a private investigator.

40.     Plaintiff Bickerstaff's job required her to speak with witnesses, gather information important to a pending judicial proceeding, and investigate a criminal case on behalf of an individual accused of breaking into the home of Jasmin Harris.

41.     On March 24th, 2012, Plaintiff called Jasmin Harris in response to an earlier call from Ms. Harris, and thereupon:

        a.  Ms. Harris agreed to make herself available to be interviewed by Plaintiff.

        b.  At no time relevant to this case did Plaintiff threaten, accost, intimidate, or act inappropriately toward Ms. Harris.

42.     About an hour and a half after the aforesaid phone call with Harris, Plaintiff received a phone call from Defendant Lucarelli, and thereupon:

        a.  Defendant Lucarelli screamed into the phone demanding that Plaintiff stop talking to Jasmin Harris, who he referred to as "my client."

        b.  Plaintiff asked Defendant Lucarelli, "Who is this?"

        c.  Defendant Lucarelli responded that he was a Detective for the Cleveland Police Department.

43.     Plaintiff ended the call with Lucarelli and called the 5th District of the Cleveland Police Department.

44.     Eventually, Plaintiff was transferred to the voice messaging system of Defendant Hill, Defendant Lucarelli's supervisor.

45.    Plaintiff left her name, the name of the attorney she was working for regarding her involvement with Jasmine Harris, and her contact information with Defendant Hill's voice mail.

## The Malicious Prosecution/Abuse of Process

46.    Shortly after Plaintiff Bickerstaff contacted Jasmine Harris, Defendant Lucarelli began a criminal investigation and prosecution of her, to wit: he asked an FBI agent to assist him in identifying Plaintiff, and he notified Jasmine Harris to save the voice message that Plaintiff had previously left with her.

47.    Defendant Lucarelli also found subscriber information related to Plaintiffs phone number, which he used to identify Plaintiff Bickerstaff.

48.    With no additional information, Defendant Lucarelli sought a warrant to arrest Plaintiff Bickerstaff.

49.    Defendant Lucarelli also knowingly authored false facts regarding Plaintiff's contact with Harris in a police report.

50.    Defendant Lucarelli also omitted important information that should have been presented to the grand jury, including but not limited to: Defendant Lucarelli failed to mention the personal relationship he had with Ms. Harris and/or other alleged women victims at the time he charged Plaintiff.

51.    On or about April 4, 2012, Defendant McDuffie became involved in this case.

52.    She was the police officer who presented Lucarelli's paperwork to the grand jury for consideration of charges against Plaintiff.

53.     On April 13, 2012, in her presentation to the grand jury, Defendant McDuffie intentionally omitted exculpatory material facts that became known to her prior to the presentation to the grand jury that undermined probable cause and would have persuaded the grand jury to no-bill an indictment against Plaintiff, to wit:

       a.    On April 4, 2012, at 20:40:08, Defendant Lucarelli texted Defendant McDuffie that Plaintiff was a private investigator, called Jasmine Harris, tried to get a statement, Jasmine said no, and Plaintiff showed up at Jasmine's house;

       b.    On April 4, 2012, at 20:40:56, Defendant McDuffie replied, "Ok! Thanks.";

       c.    On April 4, 2012, at 20:41:00, Defendant Lucarelli stated, "I'll leave u a copy on ur desk. She was working for the defendant."

       d.    On April 4, 2012, at 20:48:08, Defendant Lucarelli stated: "Okay. Thank u. If they no bill it don't worry about it."; and

       e.    Defendant Lucarelli indicated on a note in the file that he did not want this matter to be presented to the grand jury.

54.     Thus, on or about April 13, 2012, Plaintiff was indicted by a Grand Jury who was not presented truthful information by and/or was blocked by Defendants from knowing all of the material facts involving the allegations against Plaintiff, including Defendant Lucarelli's history of carrying on sexual and/or personal relationships with alleged victims, like Jasmine Harris, as well as the generally baseless nature of the evidence and allegations brought against Plaintiff.

55.     Accordingly, the indictment of Plaintiff by Defendants was done without probable cause, to wit: all Defendants knowingly wrote and/or solicited and/or facilitated and/or

processed and/or presented false statements against Plaintiff which falsely informed and guided a Grand Jury to indict her of crimes she never committed.

56.   Following the charging of Plaintiff, Defendant Legg advised Meghan Brown, a known female sexual partner of Defendant Lucarelli, to keep her mouth shut and listen to Defendant Lucarelli regarding the events pertaining to Plaintiff.

57.   Defendants collectively and/or individually had three motives for charging Plaintiff:

> a.   To provide a cover for Defendant Lucarelli's misconduct by unjustly switching the legal inquiry to Plaintiff;
>
> b.   To stop Plaintiff from speaking with a woman who was a personal and/or sexual friend of Defendant Lucarelli, in order to prevent discovery of that relationship; and
>
> c.   To retaliate against and/or otherwise interfere with Plaintiff for her communication with a physical/sexual interest of Defendant Lucarelli and her work on behalf of an accused person who was seeking justice in the Ohio court system.

58.   Plaintiff was prosecuted by Defendants as a result of the following events:

> a.   Officers at the 5th District routinely used City resources and filled-out grand jury submissions with impunity, without meaningful supervisory oversight, and thus without real accountability.
>
> b.   Defendant Hill failed to provide supervision or correction to Defendant Lucarelli or the other Defendant officers and by ignoring the chain of command;

    c.   Defendant Legg covered for Lucarelli's rule violations and failed to report and/or stop Lucarelli's misconduct.

    d.   Defendant Lucarelli acted to prevent Plaintiff, an investigator, from speaking with Jasmine Harris: 1) to interfere with Plaintiff's right to speak with witnesses and/or to frustrate her work on behalf of an accused person, and/or 2) to prevent Plaintiff from discovering Lucarelli's relationship with Jasmine Harris and other alleged women-victims.

    e.   Defendant McDuffie made a presentation of charges to the grand jury knowing or having reasonable cause to believe that the charges were not supported by probable cause, and she failed to disclose her full knowledge in that regard to the grand jury.

59.    Defendants acted with malice towards Plaintiff as they pursued and/or assisted in the presentation of baseless criminal charges against her.

60.    Defendant Lucarelli, along with those who assisted him, retaliated against Plaintiff for speaking to and/or trying to associate with a witness who had a personal relationship with Defendant Lucarelli.

61.    And as a result, Defendants by their acts or omissions brought false charges against Plaintiff, including intimidation of a crime victim or witness, per R.C. 2921.04(B), and Telecommunications Harassment per R.C. 2917.21(B).

62.    Defendants undertook their malicious actions against Plaintiff knowing that it was contrary to their training as police officers and/or prosecutors.

63.    Defendant City of Cleveland knew and/or had reason to know of the wrongdoing of Defendant officers as identified and described above.

64.     Defendant City of Cleveland never disciplined Defendants for participating in the presentation of false allegations against Plaintiff, for not stopping the wrongful conduct of Defendant Lucarelli, and/or for not supervising and/or otherwise concealing the wrongful conduct of Defendant Lucarelli.

65.     On or about May 4, 2012, Plaintiff was forced to retain a lawyer, appear for arraignment, post a $1200.00 cash or surety bond, and spend an immediate period of detention in jail to undergo booking and processing on the basis of the false charges.

66.     The proceedings against Plaintiff were dismissed in Plaintiffs favor May 24, 2012.

### COUNT I
### (Malicious Prosecution)

67.     All preceding paragraphs are incorporated as if fully re-written herein.

68.     Plaintiff was prosecuted by the malicious actions of all Defendants: to without probable cause, they created and/or procured and/or pursued and/or disseminated and/or facilitated false allegations against Plaintiff that were inserted into police documents and court filings that resulted in an unjust prosecution of Plaintiff.

69.     All Defendants and John Does 1-10 knew that the prosecution of Plaintiff was being done without probable cause but never disclosed to the grand jury the true facts involving Plaintiff - and they were facts that defeat probable cause and show Plaintiffs innocence regarding the crimes alleged against her - and thus permitted the prosecution of Plaintiff to go forward.

70.     Defendant Lucarelli knowingly prosecuted an innocent person, Plaintiff Bickerstaff, without reasonable grounds to believe she was guilty of that crime, to wit: he brought the allegations against her with the aforesaid assistance of the other Defendants and acted with of a spirit of ill will and malice.

71.     The other police officer Defendants knew or had reasonable cause to believe that by their participation they prosecuted an innocent person, Plaintiff Bickerstaff, without reasonable grounds to believe she was guilty of that crime, to wit: they hid their true knowledge of Defendant Lucarelli's misconduct regarding Jasmine Harris and/or they carried out the prosecution knowing or having reasonable cause to believe that a crime had not occurred.

72.     Defendants thus knew or had reason to believe that the allegations against Plaintiff were without probable cause and baseless, and they acted without regard for the true facts and circumstances as they knew them to be, to wit: Plaintiff did nothing to warrant the charges that were brought against her, and Defendants knew that at the time they accused her of those charges.

73.     All Defendants acted with malice, meaning they acted with an improper purpose or any purpose other than the legitimate interest of bringing an offender to justice, to wit: to prevent the disclosure of the misconduct of Defendant Lucarelli and/or to harm Plaintiff for contacting a witness with whom Defendant Lucarelli was having a personal and/or sexual relationship with, and/or for working on behalf of an accused person in the Ohio court system.

74.     The prosecution of Plaintiff ended in her favor as all charges were dismissed against her.

75.     As a result of Defendants actions as aforesaid, Plaintiff was damaged as detailed in the Damages section of this Complaint.

## COUNT II
### (Abuse of Process)

76.     All preceding paragraphs are incorporated as if fully re-written herein.

77.     In the alternative, Plaintiff avers that Defendants instituted a legal proceeding against Plaintiff that was in the proper form and with probable cause.

78.     However, Defendants instituted the proceeding in such a way that it was perverted, to wit: it was instituted to retaliate against her for contacting a witness with whom Defendant Lucarelli was having a personal relationship with and for her working on behalf of accused criminal defendants.

79.     Defendants' prosecution of Plaintiff was thus an attempt to accomplish an ulterior purpose for which it was not designed.

80.     The process was abused when Defendants orchestrated the arrest of Plaintiff through a series of dishonest actions, including but not limited to offering false statements and testimony against her from March 2012 thru May 2012.

81.     As a result of Defendants actions as aforesaid, Plaintiff was damaged as detailed in the Damages section of this Complaint.

### COUNT III
### (Retaliation)

82.     All preceding paragraphs are incorporated as if fully re-written herein.

83.     By talking with Jasmine Harris on the telephone and/or seeking to meet with or talk with her on behalf of an accused person who was seeking redress in the Ohio court system, Plaintiff was engaged in activity that is protected by the First Amendment, i.e. freely associating with a member of the general public and/or seeking to freely associate with a member of the general public for the purpose of participating in the criminal justice system on behalf of an accused person seeking justice in the Ohio court system.

84.    Plaintiff's attempt to simply speak with Jasmine Harris was a substantial factor or the motivating factor in Defendant Lucarelli and the other Defendants' actions to prosecute her.

85.    Defendants brought a case against Plaintiff that was without probable cause.

86.    By filing false allegations and presenting false and/or misleading or incomplete evidence and information to the grand jury and/or by failing to take action when a duty was owed to act, Defendants took action adverse to Plaintiff.

87.    This adverse action caused Plaintiff to suffer injuries that would likely chill a person of ordinary firmness from freely associating and/or talking with a member of the general public and/or seeking to freely associate with a member of the general public for the purpose of participating in the criminal justice system, i.e. to aid another in the petition for the redress of grievances, to wit: including but not limited to getting indicted, undergoing a restraint on personal liberty, losing financial resources, and incurring legal fees.

88.    The filing of false allegations and the presenting of false evidence and/or information to the grand jury by Defendants was motivated entirely out of a retaliatory animus, to wit: as a response to Plaintiff's exercise of her First Amendment constitutional right to speak with and/or meet with Jasmine Harris as described above and/or to stop or hinder an accused from defending himself in court.

89.    No reasonable officer would arrest Plaintiff for merely contacting Jasmine Harris on behalf of an accused person, as happened here.

90.    In retaliation for Plaintiff's discussion with Jasmine Harris and her continued efforts to contact and speak with Jasmine Harris as described herein, Defendants' acted

under color of state law and caused to be filed a meritless and/or otherwise legally deficient or legally improper set of charges against Plaintiff.

91.     As a result of Defendants actions as aforesaid, Plaintiff was damaged as detailed in the Damages section of this Complaint.

## COUNT IV
## (Supervisory Liability)

92.     All preceding paragraphs are incorporated as if fully re-written herein.

93.     Defendant Hill and John Does 1-10 were the direct supervisors of Defendant Lucarelli and had supervisory authority over the 5th District of the Cleveland Police Department.

94.     At all times relevant to this action, Defendant Hill and John Does 1-10 knew or reasonably should have known of and/or participated in, and/or condoned, and/or ratified:

> a.     Defendant Lucarelli's inappropriate relationships with alleged women-victims that created a conflict of interest between Lucarelli's personal life and the obligations of his professional life; and/or
>
> b.     Defendant Lucarelli's and/or the other Defendants' custom of communicating and/or texting with each other about law enforcement matters, alleged victims of crime, use of force, and/or criminal investigations in a manner that ignored the proper chain of command, and/or furthered improper personal agendas of the Defendants and/or facilitated the hiding and/or covering up of police misconduct; and/or

c. Defendant Lucarelli's and/or the other Defendants' unsupervised presentations to the grand jury that resulted in individuals being indicted on misinformation and/or lies; and/or

d. Defendant Lucarelli's and/or the other Defendants' habit and/or custom of producing grand jury documentations and/or police reports designed to cover-up for fellow officer misconduct and/or to pursue inappropriate goals unrelated to legitimate law enforcement objectives.

95. Defendants Hill and John Does 1-10 knew or reasonably should have known that these acts and/or failures to act of the Defendants would likely cause Defendants to inflict the constitutional injury that befell Plaintiff, to wit: Plaintiff was prosecuted by Defendants on the basis of misinformation and intentional omissions and/or without probable cause and/or for reasons other than a legitimate law enforcement objective, and/or in retaliation for Plaintiff's constitutionally protected conversation with a person who was a personal/sexual interest of Defendant Lucarelli.

96. Defendants Hill and John Does 1-10 had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent Defendants from engaging in the above-stated conduct.

97. Despite his/their knowledge of the Defendant officers' misconduct, as stated above, Defendants Hill and John Does 1-10 took no action, failed to impose reasonable discipline, failed to follow chain of command, failed to document the instances of misconduct, and/or otherwise abandoned his/their supervisory duties.

98. As a result of his/their failures and/or abandonment of his/their supervisory duties, as stated above, Defendant Hill and John Does 1-10 created an environment that

condoned misconduct and perpetuated and/or facilitated and/or aided Defendants in the baseless prosecution of Plaintiff.

99.    Defendant Hills' and Hon Does 1-10 engaged in acts and omissions that were the product of a reckless or callous indifference to Plaintiff's constitutional rights.

100.    By their acts and failures to act as stated above, Defendant Hill and John Does 1-10, in fact, caused Plaintiff's constitutional deprivation: to wit, she was prosecuted without probable cause by a grand jury that was lied to and/or from whom material exculpatory facts were withheld in violation of the 4th and 14th Amendments to the United States Constitution, and/or for reasons other than a legitimate law enforcement objective, and/or in retaliation for Plaintiff's constitutionally protected conversation with a person who was a personal/sexual interest of Defendant Lucarelli.

101.    As a consequence of Defendants actions as aforesaid, Plaintiff was damaged as detailed in the Damages section of this Complaint.

**COUNT V**
**(Municipal Liability)**

102.    By and through the above-referenced Defendants, Defendant City of Cleveland has implemented and/or executed an officially adopted and promulgated a policy of toleration of improper police conduct, including but not limited to: toleration of officers having physical/sexual relationships with alleged victim-women; condoning and toleration of officers submitting altered and/or false police reports and departmental documentation to cover-up for rule-breaking and other misconduct; officers not properly tracking or monitoring the use of police equipment (cars, office space, phones); condoning and toleration of officers submitting incomplete and/or woefully deficient and/or false grand jury packages; condoning and/or tolerating officers covering up for

each other's rule breaking and other misconduct; and toleration for officer deceit and falsehoods in the investigation of and/or participation in law enforcement-related activities.

103.   The failures to act of Defendant Hill and John Does 1-10 misconduct shocks the conscience and it created an unstated policy of toleration of improper police conduct, including but not limited to: toleration of officers having physical/sexual relationships with alleged victim-women; condoning and toleration of officers submitting altered and/or false police reports and departmental documentation to cover-up for rule-breaking and other misconduct; officers not properly tracking or monitoring the use of police equipment (cars, office space, phones); condoning and toleration of officers submitting incomplete and/or woefully deficient and/or false grand jury packages; condoning and/or tolerating officers covering up for each other's rule breaking and other misconduct; and toleration for officer deceit and falsehoods in the investigation of and/or participation in law enforcement-related activities.

104.   This aforementioned policy was promulgated by the supervisory Defendants, including but not limited to Defendant Hill and John Does 1-10, whose acts or edicts represent official policy.

105.   Defendant City of Cleveland has thus adopted a governmental custom of toleration of officers having physical/sexual relationships with alleged victim-women; condoning and toleration of officers submitting altered and/or false police reports and departmental documentation to cover-up for rule-breaking and other misconduct; officers not properly tracking or monitoring the use of police equipment (cars, office space, phones); condoning and toleration of officers submitting incomplete and/or woefully deficient and/or false grand jury packages; condoning and/or tolerating

officers covering up for each other's rule breaking and other misconduct; and toleration for officer deceit and falsehoods in the investigation of and/or participation in law enforcement-related activities.

106.    In other words, the acts and omissions of the police officer Defendants were in compliance with the actual customs, policies, practices and procedures of the City of Cleveland.

107.    Being widespread within the 5th District, the acts and omissions of the police officer Defendants should have, and upon information and belief likely did, come to the attention of City policy makers as unspoken custom and policy.

108.    The above-referenced examples of the unconstitutional policy and/or custom of tolerating dishonesty in law enforcement activities was the moving force behind Plaintiff's injury, i.e., her baseless prosecution without probable cause occurred because the officers were following the custom of toleration of officers having physical/sexual relationships with alleged victim-women; condoning and toleration of officers submitting altered and/or false police reports and departmental documentation to cover-up for rule-breaking and other misconduct; officers not properly tracking or monitoring the use of police equipment (cars, office space, phones); condoning and toleration of officers submitting incomplete and/or woefully deficient and/or false grand jury packages; condoning and/or tolerating officers covering up for each other's rule breaking and other misconduct; and toleration for officer deceit and falsehoods in the investigation of and/or participation in law enforcement-related activities.

109.    As a result of the actions of Defendant City of Cleveland,  as aforesaid, Plaintiff was damaged as detailed in the Damages section of this Complaint.

**COUNT VI**

## (Reckless, Wanton, or Willful conduct / R.C. 2921.52)

110.    All preceding paragraphs are incorporated as if fully re-written herein.

111.    By acting in the manner described above, Defendants wantonly and willfully committed reckless violations of the law, including but not limited to prosecuting Plaintiff without probable cause.

112.    All Defendants had knowledge that they infused and/or facilitated the presentment of false charges against Plaintiff.

113.    In wanton and willful disregard for the laws of the State of Ohio and City of Cleveland, and in wanton and willful disregard for the training that Defendants received in their capacity as law enforcement employees for the City of Cleveland, and/or Cuyahoga County, Defendants created, perpetuated and/or disseminated a series of falsehoods and misstatements against Plaintiff that laid a false foundation for the prosecution of Plaintiff as stated above.

114.    By acting in the manner described above, Defendants breached their duty to Plaintiff to follow and obey Ohio law and/or obey their police training and/or prosecutorial policies.

115.    By acting in the manner described above, Defendants showed a reckless, willful and/or wanton disregard for the rights and safety of Plaintiff.

116.    By acting in the manner described above, Defendants knowingly broke Ohio law, caused injury to Plaintiff including but not limited to anxiety, fear, a period of detention in jail, and caused her to incur court costs and attorney's fees for which she has a right to reimbursement.

117.   As a proximate result of Defendants' wanton, willful, reckless and/or malicious disregard for the rights of Plaintiff as aforesaid, Plaintiff was damaged as detailed below in the Damages section of this Complaint.

### COUNT VII
### (Civil Conspiracy)

118.   All preceding paragraphs are incorporated as if fully re-written herein.

119.   All of the Defendants identified herein and/or John Does Number 1-10 worked together in a malicious combination to bring charges against Plaintiff without probable cause and without disclosing the true facts to the grand jury as detailed above.

120.   All of the Defendants participated in a custom of toleration of officers having physical/sexual relationships with alleged victim-women; condoning and toleration of officers submitting altered and/or false police reports and departmental documentation to cover-up for rule-breaking and other misconduct; officers not properly tracking or monitoring the use of police equipment (cars, office space, phones); condoning and toleration of officers submitting incomplete and/or woefully deficient and/or false grand jury packages; condoning and/or tolerating officers covering up for each other's rule breaking and other misconduct; and toleration for officer deceit and falsehoods in the investigation of and/or participation in law enforcement-related activities.

121.   All Defendants were part of the aforesaid malicious combination.

122.   All Defendants worked together to commit an act wholly independent of the conspiracy itself, to wit: malicious prosecution, abuse of process, instituting, issuing, and advancing baseless charges against Plaintiff on bogus allegations in order to maliciously punish and/or injure and/or retaliate against her.

123.   All Defendants caused injury to Plaintiff's person and property as stated in the Damages section of this Complaint.

## DAMAGES

124.   Plaintiff incorporates all preceding paragraphs as if fully restated herein.

125.   As a direct and proximate result of Defendants' actions, as set forth in the preceding paragraphs above, Plaintiff has been damaged, including but not limited to: being brought before a judge on an indictment that was maliciously procured by Defendants as stated above, unjust and unwarranted detention in jail for booking and processing, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self esteem, mental and emotional distress, extreme fear, anxiety, loss of sense of personal safety and dignity, and loss of personal finances to pay for legal fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, for not less than $50,000.00, including but not limited to:

A. Compensatory and consequential damages against all Defendants in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B. Punitive damages against the police officer Defendants in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C. Equitable relief, including, without limitation, that Defendant City of Cleveland be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D. Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

E.  Any and all other relief that this Court deems equitable, just and proper.

### JURYDEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

_____

**Robert F. DiCello, Esq**. (0072020)
THE DICELLO FIRM
7556 Mentor Avenue
Mentor, Ohio 44060
P: 440-953-8888
F: 440-953-9138
E: rfdicello@dicellolaw.com
*Attorney for Plaintiff*